UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                        **MEMORANDUM AND ORDER**
                                                14-CR-521

DENNIS DONOVAN KENNEDY,
    also known as "Ronald Brooks,"

                                Defendant.
------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 6, 2015, Defendant Dennis Donovan Kennedy, also known as Ronald Brooks, ("Defendant") pled guilty to a single-count indictment pursuant to a Plea Agreement. ECF No. 19–20. The Court now provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons stated below, Defendant is hereby sentenced to forty-eight months of incarceration, to be followed by three years of supervised release.

## BACKGROUND

In late August of 2014, Immigration and Customs Enforcement ("ICE") received an automated notice of Defendant's arrest in New Jersey. Presentence Investigation Report ("PSR") ¶ 2, ECF No. 21. A warrant was issued on September 4, 2014, and the United States Marshals Service arrested Defendant on September 11, 2014. *Id.* ¶ 4. On September 24, 2014, Defendant was indicted on a single count of Illegal Reentry. Indictment, ECF No. 7. On August 6, 2015, Defendant pled guilty. ECF No. 19–20. The Court hereby sentences Defendant and sets forth its reasons for the sentence using the rubric of the Section 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

Section 3553, Title 18, of the United States Code outlines the procedures for imposing sentence in a criminal case. When the District Court chooses to impose a sentence outside of the

1

Sentencing Guidelines range, 18 U.S.C. § 3553(c)(2) mandates that the Court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The Court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under [Section] 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted). Section 3553(a) provides a list of reasons for the Court to consider in choosing what sentence to impose on a criminal defendant. *See* 18 U.S.C. § 3553(a). The Court addresses each of the 18 U.S.C. § 3553(a) factors in turn.

## II. Analysis

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first Section 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the [D]efendant." 18 U.S.C. § 3553(a)(1).

#### a. History and Characteristics of Defendant

##### i. Early Life of Defendant

Defendant, a citizen of Jamaica, was born Dennis Donovan Kennedy on May 7, 1978, in St. Elizabeth Parish, Jamaica, to Dorothy Stewart and Winston Kennedy. PSR ¶ 27. Soon after Defendant's birth, Defendant's father abandoned his wife and two infant children. *Id.* ¶¶ 27, 30.

As a single mother of three, Ms. Stewart was unable to fully provide for her children. Constantly living with insufficient money and food, Defendant, his older brother, Christopher, and his maternal half-sister, Nicola Hutchinson, resided in the Maxfield Avenue neighborhood in the capital city of Kingston, Jamaica. *Id.* ¶ 28, 30; Def. Sentencing Mem. at 1, ECF No. 22.

When Defendant was either fifteen or seventeen years old, his mother departed for Brooklyn, New York, with her youngest child, Caroline "Rashida" Hutchinson. PSR ¶¶ 28, 30. Ms. Stewart left her three older children in Jamaica to the care of an unrelated "guardian." *Id.* ¶ 28. The guardian soon abandoned the children, leaving Christopher, who already suffered from symptoms of schizophrenia, in charge of the household. *Id.* ¶¶ 28, 30.

At least, this is one version of Defendant's childhood. Defendant provided a conflicting account of his personal circumstances to the New York County Probation Department in 2001. *See id.* ¶ 29. In this alternative world, Defendant was born to Dorothy Stewart and an unknown father in the Virgin Islands. *Id.* His mother left her children to an aunt who cared for the children for more than a decade. *Id.*

In the late 1990s or early 2000s, Defendant illegally entered the United States. *Id.* ¶¶ 29, 31, 36. During his time in the United States—both before his deportation in 2004 and after his illegal reentry—Defendant fathered three children in three different relationships. *Id.* ¶¶ 32, 36. Defendant's first child, Lailani McCray (age twelve), resides with her mother in Atlanta, Georgia. *Id.* ¶ 33. Defendant's middle child, Dante Ramadan (age eleven), resides with his mother in Queens, New York. *Id.* ¶ 34. Defendant's

youngest child, Nathan Henry (age one), resides with his mother in Brooklyn, New York, in Defendant's mother's apartment. *Id.* ¶ 35.

### ii. U.S. Criminal History of Defendant

In the early 2000s, Defendant committed two crimes which resulted in his deportation. *Id.* ¶¶ 20, 21. On October 13, 2001, a police officer observed Defendant engaging in a hand-to-hand drug transaction in Washington Square Park in Manhattan. *Id.* ¶ 20. A subsequent search uncovered thirty-four vials of crack cocaine on Defendant's person. *Id.* Under the alias "Mo Brown" from the Virgin Islands,[1] Defendant was prosecuted in New York County Supreme Court for Attempted Criminal Sale of a Controlled Substance Third Degree. *Id.* Defendant pled guilty to the charge. *Id.*

On November 26, 2002, the NYPD pulled over a car for failing to use a turn signal. *Id.* ¶ 21. Defendant, out on bail while awaiting a sentence for his October 2001 crime, was in the passenger seat of the car. *Id.* A search of the car, which displayed a fraudulent license plate, revealed sixty-six bags of crack cocaine in the front passenger side of the car. *Id.* Defendant pled guilty to Criminal Possession of Narcotics Drug Fourth Degree and was sentenced in Queens Supreme Court to an indeterminate term of custody of one to three years, a six-month suspension of driving privileges, and a $210.00 court surcharge. *Id.*

During the second criminal proceeding in Queens Supreme Court, the New York County Supreme Court issued a bench warrant in regards to Defendant's first arrest. *Id.* ¶

---

[1] Defendant also provided a Social Security Number, but now states that he was never issued a Social Security Number. PSR at 2.

4

20. After being returned on this warrant, Judge Soloff, of the New York Supreme Court, sentenced Defendant to an indeterminate term of twenty months to five years custody and a six-month driver's license suspension. *Id.*

### iii. Deportation and Arrest for Murder

Defendant was deported from the United States on March 23, 2004, but illegally reentered. *Id.* ¶ 36. It is unclear when and how Defendant reentered. *Id.* ¶ 36. What is clear, however, is that on June 27, 2007, while still in Jamaica, Defendant was arrested for murder and escaped police custody two days later. *Id.* Defendant is wanted for murder in Jamaica in relation to the shooting death of Richard Barrett. *Id.* ¶ 25. Defendant claims he was "framed" because of his criminal history in the United States. *Id.*

### iv. Identity Fraud by Defendant

On August 26, 2014, the North Bergen Police Department in New Jersey responded to a call from an apartment complex known as "The Views at Hudson Pointe." *Id.* ¶ 24. Police officers met the apartment manager, who informed them that a stranger had attempted to take possession of FedEx packages addressed to Richard Cabrera, a resident of the complex who was not home. *Id.* The stranger, identifying himself as Richard Cabrera, approached the FedEx driver at a nearby location to take immediate possession of Richard Cabrera's packages. *Id.* The driver, suspicious of the unusual situation and the mismatch between the physical description of the real Richard Cabrera and the stranger, did not comply. *Id.* Sometime during this discussion with the police, the FedEx driver identified the stranger's parked car to police. *Id.*

Police officers approached the car and found Defendant in the driver's seat and Ms. Malaika Aulders in the passenger seat. *Id.* Defendant, identifying himself as Ronald Brooks,

5

presented the police officers with a Georgia driver's license. The driver's license appeared legitimate: It was obtained from a legitimate source on August 24, 2010, and Ronald Brooks appears to be a real person. *Id.* The police officers, however, noticed that Defendant also carried a New Jersey driver's license carrying the name Richard Cabrera. *Id.* This New Jersey driver's license, while displaying Defendant's photograph image, carried a fake state identification number and had no holograms. *Id.* As the police questioned Defendant, Defendant became upset and told officers that an unnamed man handed the New Jersey identification to Defendant and paid him $100.00 to pick up the FedEx packages. *Id.* Defendant still claimed to be Ronald Brooks, born in Florida. *Id.*

Further investigation into the packages revealed four iPhones and companion iPhone accessories. *Id.* A search of the car uncovered three more iPhones still in their original packaging in the center console with their receipt bearing the name Maureen Kurdziel. *Id.* The search further revealed three matching cellular telephone chargers and three iPhone protectors in the trunk of the car. *Id.* Defendant denied knowledge of the iPhones in the car. *Id.*

When officers contacted the real Richard Cabrera, Mr. Cabrera informed police that he had not ordered the iPhones, that he was a recent victim of identity fraud, and that he had multiple unauthorized credit accounts opened in his name. *Id.* Mr. Cabrera had in fact previously filed a police report about a similar fraud, in which his identity was fraudulently used to purchase iPad computers from T-Mobile. *Id.*

Defendant was arrested, fingerprinted, photographed, and released on $5,000.00 bond the same day as his arrest. *Id.* Defendant was told to return to court for an initial hearing on September 3, 2014, but he failed to appear. *Id.* A bench warrant remains outstanding with the Hudson County Sheriff's Office. *Id.*

### b. Nature and Circumstances of the Offense

As a result of Defendant's 2003 aggravated drug felony conviction, ICE received an automatic notice upon Defendant's New Jersey arrest. *Id.* ¶ 2–3. On September 2, 2014, agents of the U.S. Marshals Service surveilled the Brooklyn address provided by Defendant as a condition of his release. *Id.* ¶ 4. An arrest warrant issued on September 4, 2014, and Defendant was arrested on September 11, 2014. *Id.*

## 2. The Need for the Sentence Imposed

The second Section 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The Court addresses each subsection in turn.

### a. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment

The Court finds a significant sentence is necessary to accomplish the purposes of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

Defendant has been arrested four times during his unlawful presence in the United States: twice for possession of crack cocaine, once for identity theft, and once for illegal reentry into the United States.

Defendant has repeatedly jumped bail. Judge Soloff of the New York County Supreme Court issued a bench warrant for Defendant after he failed to appear for sentencing. PSR ¶ 20.

An active bench warrant currently awaits Defendant with the Hudson County Sheriff's Office. *Id.* The Jamaican Constabulary also has a pending warrant for Defendant's re-arrest for the shooting death of Richard Barrett.

Defendant's numerous flights from justice are made possible by Defendant's willingness and ability to disguise his identity. Defendant's pending New Jersey action exemplifies this trait: Not only did Defendant steal a person's identity for commercial benefit, but Defendant twice lied to police officers about his identity. Defendant first provided an altered Georgia driver's license, and then proceeded to lie about his fraudulent New Jersey driver's license. In fact, various elements of Defendant's life remain a question before the Court today: Defendant's Social Security Number, *supra* note 1; Defendant's childhood, PSR ¶ 29; and perhaps most troubling for the purposes of sentencing, how Defendant reentered the United States, *id.* ¶ 7.

Given Defendant's criminal history, the Court finds that a significant sentence is necessary to reflect the seriousness of Defendant's offense and the consequences of the offense, promote respect for the laws of the United States, and to provide just punishment.

### b. Affording Adequate Deterrence to Criminal Conduct

"Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." *Davis*, 2010 WL 1221709, at *2. The Court finds that a significant sentence affords adequate deterrence, both specific and general, to Defendant's criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B).

In regards to specific deterrence, a significant sentence is the only way to ensure that Defendant will not return to his life of crime. Defendant has sold drugs, created false documents, lied to police officers, allegedly participated in identity theft, escaped custody, illegally entered the United States, and allegedly committed murder. No remedy other than

8

incapacitation may prevent such a broad array of criminal activity. This is particularly true given Defendant's ease in cloaking his identity. For example, neither the U.S. Marshals Service nor ICE detected Defendant's illegal presence in the United States even though an arrest warrant has been issued in relation to an alleged murder. Discovery of this outstanding arrest warrant only came about from a separate investigation. *Id.* ¶ 25.

In regards to general deterrence, a significant sentence will send a clear message to other undocumented immigrants hiding within the United States from foreign law enforcement that the United States is not a place of criminal business and that there are no illegal opportunities here worth the risk.

### c. Protecting the Public from Further Crimes of the Defendant

A significant sentence is necessary to protect the public from further crimes by the Defendant given his likelihood of recidivism and difficulty in detection.

A significant sentence protects the public from drugs, identity theft, and, potentially, crimes of violence. Defendant has been arrested twice for possession of drugs in quantities evidencing Defendant's plans to distribute the drugs to multiple persons. Defendant's arrest in New Jersey for Theft by Deception, Wrongful Impersonation, and Using False Identification further corroborates Defendant's danger to the public.

Defendant's ability to avoid detection presents a weighty concern. Defendant has repeatedly lied about his identity and reentered the United States without detection. Even though Defendant will be removed to Jamaica following his incarceration, Defendant has escaped Jamaican custody before. PSR ¶ 25. Furthermore, Jamaica is not a participant in the International Criminal Police Organization ("Interpol") "Red Notice" policy—a policy of notifying Interpol of a criminal arrest warrant for a person wanted for extradition. *Id.*; *see also*

U.S. Dep't Justice, U.S. Attorneys' Manual, Interpol Red Notices, *available at* https://www.justice.gov/usam/criminal-resource-manual-611-interpol-red-notices (last visited Mar. 9, 2016). Indeed, in the instant case, the U.S. Marshal Service and ICE did not learn of Defendant's arrest warrant for murder except under a separate investigation. PSR ¶ 25.

This Court's sentence is therefore necessary to protect the public from further crimes by the Defendant.

### d. Providing Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Defendant does not require additional educational or vocational training, medical care, or other correctional treatment. Defendant participated in programs for alcohol and substance abuse while serving his prior sentence at the Ulster Reception Facility and Lakeview Correctional Facility. *Id.* ¶ 20. Here, however, Defendant reports "light, social" consumption of alcohol and "rare" marijuana use. *Id.* ¶ 41. Furthermore, Defendant has displayed no interest in education beyond his eight years of schooling, *id.* ¶ 42, and has not appeared to seriously seek lawful employment, *see id.* ¶¶ 43–48. Accordingly, this Section 3553(a) factor is not a relevant consideration in Defendant's sentencing.

### 3. The Kinds of Sentences Available

The third Section 3553(a) factor requires the Court to discuss "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Illegal Reentry in violation of 8 U.S.C. § 1326(a). *See* Plea Agreement at 1, ECF No. 20. This count carries a maximum imprisonment term of twenty years, and a term of supervised release of no more than three years. *Id.* § 3583(b)(2). This count, as a Class C Felony, makes Defendant eligible for not less than one nor more than five years of

probation. 18 U.S.C. § 3561(c)(1). The Court must impose, absent extraordinary circumstances, a fine, restitution, or community service as conditions of probation. *Id.* § 3563(a)(2). This count further sets a maximum fine of $250,000.00, *id.* § 3571(b), and a mandatory $100.00 special assessment, *id.* § 3013. The Court may impose the costs of prosecution. U.S.S.G. § 5E1.5; *see United States v. Mordini*, 366 F.3d 93, 94–95 (2d Cir. 2004) (finding that costs imposed shall not exceed the maximum guideline fine unless departure is justified).

The Court's sentence falls within the kinds of sentences available to Defendant.

### 4. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth Section 3553(a) factor requires the Court to detail "the kinds of sentence and the sentencing range established for[] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced[.]" 18 U.S.C. § 3553(a)(4)(A).

Defendant's violation of 8 U.S.C. § 1326(a) falls within Guidelines § 2L1.2(a), which sets a base offense level of eight. U.S. Sentencing Guidelines Manual § 2L1.2(a). Given Defendant's 2003 felony drug conviction, sixteen levels are added. *Id.* § 2L1.2(b)(1)(A). Defendant's Acceptance of Responsibility reduces the offense level by three levels. *Id.* § 3E.1.1. This results in a Guideline offense level of twenty-one, corresponding to a Guidelines imprisonment range of forty-six to fifty-seven months, assuming a criminal category of III. *Id.* Ch. 5 Pt. A.

The Guidelines further recommend a supervised release term of one to three years for Defendant's Class C felony, *id.* § 5D1.2(a)(2), and a fine between $15,000.00 and $150,000.00, *id.* § 5E1.2(c). Defendant's applicable guideline range is in Zone D of the Sentencing Table, making Defendant ineligible for probation. U.S.S.G. § 5B1.1, cmt.(n.2).

The U.S. Probation Department recommends forty-six months of custody, a $100.00 special assessment, and three year period of supervised release with two conditions: (1) Defendant shall not illegally reenter the United States if deported, and (2) Defendant shall not possess a firearm, ammunition, or destructive device. U.S. Probation Dept. Sentence Recommendation, at 1. The Presentence Report recommends no fine, as Defendant would be unable to pay. PSR ¶ 51. Defense counsel, in his Sentencing Memorandum, does not request a specific term. Instead, counsel asks this Court to consider Defendant's "remorse and plea for mercy" and "temper justice with mercy." Def. Sentencing Mem. at 3. The Government, in its Sentencing Memorandum, requests a sentence within the Guidelines range of forty-six to fifty-seven months. Gov't Sentencing Mem. at 3.

### 5. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth Section 3553(a) factor requires the Court to evaluate "any pertinent policy statement [] issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and [] that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(5). There are no pertinent policy statements with respect to Defendant's particular criminal conduct, and therefore this factor is not relevant here.

### 6. The Need to Avoid Unwarranted Sentence Disparities

The sixth Section 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant pled guilty to Illegal Reentry in violation of 8 U.S.C. § 1326(a). *See* Plea Agreement at 1, ECF No. 20. Congress, in passing 8 U.S.C. § 1326(a) into law, set a maximum imprisonment term of twenty years. *Id.* § 3583(b)(2); *see also Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) ("The Court without exception has sustained Congress' plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." (internal citation and quotation marks omitted)); *Guzman v. Tippy*, 130 F.3d 64, 65 (2d Cir. 1997). Accordingly, a sentence of up to twenty years imprisonment is not beyond the pale for Defendant's crime. Section 1326(b) sufficiently avoids disparities with other sentences that recognize the severity of Defendant's crime, and this Court's sentence falls within the penalties dictated by Congress under Section 1326(b).

### 7. The Need to Provide Restitution

Lastly, the seventh Section 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in Defendant's case. *See* 18 U.S.C. § 3663. Accordingly, this factor is not relevant.

## CONCLUSION

A sentence of forty-eight months of incarceration, to be followed by three years of supervised release, and the $100.00 mandatory assessment fee, is appropriate and comports with the dictates of Section 3553. This sentence is consistent with, and sufficient but no greater than necessary to accomplish the purposes of 18 U.S.C. § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release recommended by the U.S. Probation Department.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 23, 2016
      Brooklyn, New York